FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ OCT 5 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MONA A. SANDS,

                 Plaintiff,

- against -

CITY OF NEW YORK, ANDREW M.
AMPLO, Police Officer, Shield No. 19004,
JOHN SIMON, Police Officer, whose first
name and badge number are unknown; and
JOHN DOES 1-3, Police Officers, whose
names and badge numbers are presently
unknown,

                 Defendants.

------------------------------------------------------------X

**MEMORANDUM DECISION**

CV-04-5275 (BMC) (CLP)

COGAN, District Judge.

This case bears some resemblance to Arlo Guthrie's famous ballad, "Alice's Restaurant," which tells the story of a littering incident that starts a chain of law enforcement reaction. From his perspective, Arlo is a peaceful, law abiding citizen who has applied a common sense solution to a garbage disposal problem that happens to technically violate local ordinances. Nevertheless, his nemesis, Officer Obie, arrests him, and he is ultimately prosecuted and convicted.

Here, it is not disputed that plaintiff parked her car illegally, with the rear end entering into a bus stop zone, so that she could unload her car in front of her residence. It is also undisputed that when the police wrote her a ticket, she became angry, and in what appears to have been an act of civil disobedience, she tore up the ticket and threw it on

the ground in front of them. The parties agree that this constitutes the offense of littering under §153.01 of the Health Code of the City of New York.

Beyond that, the parties dispute virtually everything. The police officers contend that plaintiff refused to show identification despite repeated requests; that she attempted to leave the scene; and that she flailed her arms at the officers and attempted to push past them. Plaintiff contends that she was fully cooperative when the officers requested identification; that she offered to pick up the garbage; and that they pulled her out of her car and slammed her up against it.

The incident resulted in plaintiff's arrest for Disorderly Conduct/Violent Behavior; Resisting Arrest; Parking at a Bus Stop; and Littering. She was charged by the District Attorney with Littering Prohibited and Resisting Arrest. All of the charges were ultimately dismissed.

Plaintiff thereupon commenced this action under 42 U.S.C. §1983 and New York State law, alleging excessive force; false arrest; malicious prosecution; and negligent hiring, training and supervision. Presently before the Court is defendants' motion for partial summary judgment as to plaintiff's false arrest, malicious prosecution, and municipal liability claims. Plaintiff does not oppose the motion relating to the malicious prosecution claims and the federal claim for municipal liability, and defendants' motion is therefore granted as to those claims.[1] The Court granted the motion on the record after oral argument; this Memorandum Decision sets forth the basis for that ruling.

---

[1] Defendant has not moved for summary judgment on plaintiff's excessive force claims.

## DISCUSSION

Defendants argue that they are entitled to summary judgment on plaintiff's false arrest claims for two reasons: first, defendants had probable cause to arrest plaintiff and therefore, the arrest was privileged; and second, even if defendants lacked probable cause, they are entitled to qualified immunity because reasonable officers could disagree about whether clearly established rules permitted them to make an arrest. Defendants also argue that summary judgment is appropriate on plaintiff's negligent retention claim because plaintiff failed to raise an issue of fact concerning whether the City knew or should have known of a propensity on the part of the officers to engage in the conduct that caused plaintiff injury.

### I.   Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Where "reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." Id., 477 U.S. at 255. Only disputes about material facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. Id. at 248.

## II. Was There Probable Cause to Arrest Plaintiff?

Under New York law, a plaintiff claiming false arrest must establish that: (1) the defendant intended to confine her; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996) (citing Broughton v. State, 37 N.Y.2d 451 (1975)). A §1983 claim for false arrest requires "substantially the same" test. Id. (citing Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991)).[2] There is no dispute that Officers Amplo and Simon intended to confine plaintiff; that plaintiff was conscious of the confinement; and that plaintiff did not consent to the confinement. Therefore, the legal issue is whether plaintiff's arrest was "privileged."

The test for whether an arrest is privileged is straightforward: an arrest is privileged if it is supported by probable cause. Illinois v. Gates, 462 U.S. 213 (1983); see also Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) ("probable cause to arrest constitutes justification and is a complete defense to an action for false arrest") (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Probable cause, in turn, exists "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993); Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). The test is an objective one; an officer's subjective belief at the time of the arrest is irrelevant. Martinez v. Simonetti, 202 F.3d 625, 633 (2d Cir. 2000). Even when probable cause is based on mistaken information, it can still exist so long as the arresting officer acted

---

[2] Plaintiff initially asserted claims for false arrest and false imprisonment separately, but does not dispute that the claims can be treated interchangeably. See Covington, 171 F. 3d at 125.

4

reasonably and in good faith in relying on that information. Bernard v. United States, 25 F.3d 98 (2d Cir. 1994).

The question in this case is whether Officers Amplo and Simon had knowledge or reasonably trustworthy information to form a belief that plaintiff committed an offense; if so, plaintiff cannot establish that they are liable under state or federal law for false arrest. It is clear from the record that defendants Amplo and Simon had probable cause to believe that plaintiff committed a parking infraction and the offense of littering. Plaintiff testified that after the officers issued her a ticket for parking in the bus stop, they observed her tear the ticket and throw it on the ground. Specifically, plaintiff testified, "I just looked at [the ticket] and said [a profanity] and tore that ticket. They saw me tear the ticket..." She again stated later in her deposition that the officers "apparently...saw when I tore the ticket," which prompted the officers to return to her car and the rest of the exchange to allegedly ensue.[3] Whether the officers also had probable cause to believe plaintiff resisted arrest and engaged in disorderly conduct depends on whose version of the facts is accepted; however, because the officers had probable cause to arrest plaintiff for at least some offense, I need not reach the other offenses for which plaintiff was arrested.

Under the Supreme Court's decision in Devenpeck v. Alford, 543 U.S. 146 (2004), the existence of probable cause on the littering offense is sufficient to validate plaintiff's arrest, even assuming the Court accepts plaintiff's version of the incident. Plaintiff argues that defendants lacked probable cause to arrest her because they did not

---

[3] The officers' testimony is consistent. When asked whether there came a time when he "saw [plaintiff] rip up the ticket," Officer Amplo stated "yes." He was then asked what plaintiff did with the ripped ticket, and he responded "she threw it to the ground." Officer Simon was asked if he saw what, if anything, plaintiff did with the traffic ticket, and he responded "she ripped the ticket up." Simon further testified that after she ripped the ticket up, "she threw it to the ground."

intend to arrest her solely for littering, and possibly did not even know they could arrest her for casual littering. Plaintiff points to Officer Simon's testimony as follows:

> Q: Were you authorized as a police officer to make arrests for littering back on February 8. 2004?
>
> A: Was I authorized?
>
> Q: Yes.
>
> A: To make an arrest?
>
> Q: Yes.
>
> A: For littering?
>
> Q: Yes.
>
> A: If it is a "C" summons, criminal court summons, then it is in lieu of an arrest.
>
> Q: Are there summons that are not "C" summons?
>
> A: Yes.
>
> Q: What would those be?
>
> A: It is littering but dumping on a large scale.

Plaintiff's argument, however, fails under Devenpeck. Probable cause to believe that some offense has been committed is sufficient to justify an arrest, even if the offense supporting probable cause is different from the one charged. For example, in Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006), the Second Circuit considered a situation in which plaintiff was arrested for two offenses, both of which were ultimately dismissed, and it was a "close question" whether the officer had probable cause to arrest plaintiff for one of them. Nonetheless, applying Devenpeck, the Court held that it was not required to determine whether the officer had probable cause to justify arrest on the first offense because it was clear that no reasonable juror would question the officer's probable cause for arrest based on the second. Specifically, the Court explained that, when faced with a

6

claim for false arrest, the Court focuses on "the validity of the arrest, and not on the validity of each charge." Id.

It necessarily follows that because probable cause existed to believe that plaintiff had littered in violation of the Health Code, it is immaterial (1) whether the officers subjectively believed they had probable cause to arrest plaintiff for this sort of littering, because their subjective belief at the time of the arrest is irrelevant, see Martinez, 202 F.3d at 633; and (2) whether plaintiff engaged in disorderly conduct or resisting arrest in addition to littering, because probable cause existed for arrest as to at least one offense. See Devenpeck, supra.

Plaintiff's argument that a material issue of fact remains because it is unclear at which point defendants decided to arrest plaintiff, and for what offense, misses the mark. To survive summary judgment, plaintiff must produce evidence that a factual issue remains concerning whether defendants had knowledge or information sufficient to warrant the belief that plaintiff committed any offense. Plaintiff has not raised an issue in this regard. Instead, plaintiff admits that she committed the offense of littering by throwing the torn parking ticket on the street, which defendants observed. No reasonable trier of fact could find that defendants lacked knowledge or information to support a belief that plaintiff committed that offense in their presence.

Plaintiff also argues that defendants lacked probable cause to arrest her because the Health Code provides that a person who litters shall be subject to a fine. According to plaintiff, the Code therefore prohibits custodial arrests for violations. However, nothing in the statute compels that conclusion. Rather, the Code provides for enforcement by the mechanisms described in sections 3.12 and 3.13. Plaintiff argues that section 3.12, which

provides for fines, penalties and forfeitures, ends the inquiry. But section 3.13 provides available means to enforce the Code as follows:

> In lieu of enforcement of this Code by way of *prosecution, recovery of civil penalties, revocation of permits, seizure, embargo and condemnation and other compulsory means,* the Department may seek to obtain the voluntary compliance with this Code by way of notice, warning or other educational means; this section does not, however, require that such non-compulsory methods be used before proceeding by way of compulsory enforcement (emphasis added).

The Notes following the section define "compulsory" enforcement: "As the language of the section specifies...where the Department, or other peace officers, such as a police officer, seeks to proceed *by arrest or issuance of a summons*, i.e., by 'compulsory means,' this section does not bar such action" (emphasis added). It goes on to state that "violations of the Code are misdemeanors." Section 3.12 sets maximum and minimum amounts of fines when they issue, but, contrary to plaintiff's argument, does not foreclose defendants from arresting someone for violating the Code. Moreover, N.Y. Crim. Proc. Law §140.10 gives officers the authority to arrest an individual when they have reasonable cause to believe the individual has committed an offense in their presence.

In Atwater v. City of Lago Vista, 532 U.S. 318 (2001), the Court declined to adopt the very rule plaintiff proposes in this case – that is, that some offenses are "fine only" offenses which officers lack the authority to enforce by custodial arrest. Instead, the Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Id. at 354. The dissenting Justices pointed out that several states provide for misdemeanors that are punishable only by fines, like disobeying traffic warning signs or littering, and found error in allowing officers to exercise discretion to arrest individuals for these "fine-only" crimes. However, the

majority declined to constrain officers' discretion to arrest even for minor offenses when the officers had probable cause that an offense was committed in the officers' presence.

Like Atwater, who admitted that she had committed an infraction by driving in a car with her children while none of them was wearing a safety belt, plaintiff admitted that she removed the parking citation from her windshield, tore it up, and threw it on the ground in the street. Moreover, plaintiff has failed to raise a factual issue concerning whether she littered in the officers' presence. She repeatedly testified that the officers saw her tear up the ticket, which prompted them to approach her car.

The Court in Atwater held that there was no dispute that the Officer observed the offense and had probable cause to arrest plaintiff, even though the statute allowed officers to issue citations in lieu of arrest. Plaintiff finds herself in a similar situation. It may be the case that an arrest for casual littering is extreme in some circumstances, but it is less extreme when there is no dispute that plaintiff engaged in the deliberately provocative act of violating the law to show her displeasure with the officers' decision to enforce it. It would be paradoxical for the law to provide that when plaintiff tears up a citation and throws it on the ground, the officers' only means of enforcement is to issue her another citation for littering, which she could then again tear up and throw on the ground with no more consequence than receiving another citation.

New York law does not constrain the officers' discretion in this regard – it explicitly makes violation of the Health Code a misdemeanor, and provides for warrantless arrest when an officer has probable cause to believe any offense has been committed in his presence. As a result, plaintiff cannot prove a necessary element of her claim for false arrest.

## III. Qualified Immunity

Even if the Court were to find that plaintiff has raised a factual issue regarding the existence of probable cause, defendants would be entitled to qualified immunity from plaintiff's false arrest claim. Qualified immunity generally shields government officials performing discretionary functions from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")). Whether an official may be held liable for an allegedly unlawful action generally turns on the "objective reasonableness" of the action, assessed in light of the legal rules that were clearly established at the time. Rules are "clearly established" if a reasonable official would understand that what he is doing violates a protected right. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640 (internal citations omitted).

The first step in the Court's analysis is to determine whether plaintiff has alleged a constitutional violation at all. Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001). Assuming that plaintiff has alleged a constitutional right to be free from arrest, the Court turns to the question of whether that right was "clearly established" at the time of the incident. This requires the Court to consider whether the law put the defendants on notice that their conduct in arresting plaintiff would be unlawful. As the

10

testimony offered by plaintiff shows, Officers Amplo and Simon clearly were not on such notice. Officer Simon testified that the law permitted him to arrest plaintiff for littering, although he was mistaken about the severity of the littering required to support an arrest. It is at least the case that "reasonably competent officers" could disagree on whether arresting plaintiff violated an established right, and defendants therefore enjoy qualified immunity from plaintiff's false arrest claims. See Malley, 475 U.S. at 341.

## IV. State Law Claim for Negligent Retention

Finally, plaintiff has failed to raise an issue of fact regarding her state law claim of negligent retention.

To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show that: (1) the tortfeasor and the defendant were in an employee-employer relationship; (2) the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) the tort was committed on the employer's premises or with the employer's chattels. Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations omitted).

Plaintiff relies entirely on one substantiated complaint against each officer to argue that the City knew or should have known the officers' propensity to engage in the conduct that caused plaintiff injury. However, these complaints are insufficient to preclude summary judgment. The factual circumstances in the complaints are distinct from the allegations in the instant case, and therefore do not raise an issue regarding defendants' propensity to engage in certain behavior. Moreover, plaintiff has failed to

present any facts concerning the City's knowledge that defendants might have a tendency to engage in the problematic behavior at issue. It is too great a leap to infer from this record, which contains only one factually distinct complaint against each officer, that the City had notice that the officers were prone to act in the manner that plaintiff alleges.

## CONCLUSION

For the forgoing reasons, defendants' motion for partial summary judgment is granted and the false arrest, malicious prosecution and municipal liability claims are dismissed.

**SO ORDERED.**

Dated: Brooklyn, New York
October 3, 2006

/S/(BMC)
_____
U.S.D.J.